966 A.2d 491 (2009)
406 N.J. Super. 57
Meredith SCHEIBNER, Plaintiff-Respondent,
v.
Ryan MASON, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 2, 2009.
Decided March 5, 2009.
*492 Matthew M. Millichap, Verona, argued the cause for appellant.
Kimberly A. Engan argued the cause for respondent (Pellettieri, Rabstein & Altman, Princeton, attorneys; John A. Hartmann, III, of counsel; Ms. Engan, on the brief).
Before Judges LISA and REISNER.
PER CURIAM.
Defendant, Ryan Mason, appeals from a final restraining order entered under the Prevention of Domestic Violence Act of 1991(Act), N.J.S.A. 2C:25-17 to -35, in favor of plaintiff, Meredith Scheibner. The predicate offense was harassment (N.J.S.A. 2C:33-4). See N.J.S.A. 2C:25-19a(13). Defendant argues that the trial court failed to follow the correct legal test to establish harassment and that purposeful conduct on his part was not established by the evidence. We reject these arguments and affirm.
The parties had a dating relationship from May 2007 to late January 2008. One night in late January (identified by plaintiff as between January 20 and January 26, and identified by defendant as January 19), the parties were at defendant's apartment. They got into an argument. Plaintiff decided to leave. Defendant interfered with her ability to gather up her belongings. Defendant engaged in physical contact with plaintiff, attempting to prevent her from leaving. Plaintiff then became fearful and attempted to call her father, but defendant took her cell phone from her. Plaintiff eventually was able to gather up her possessions and regain possession of her cell phone, after which she left. Later that night or early the next morning, defendant called plaintiff. She told him "it wasn't working out anymore and [she] did not want to see him anymore."
Over the next week or so, the parties continued to communicate by telephone. Each placed calls to the other. According to plaintiff, her calls were made only for the purpose of making arrangements to regain possession of her personal belongings that were at defendant's apartment, and because of her concern for what she perceived as defendant's drinking problem. Plaintiff said that she steadfastly told defendant in all of these conversations that their relationship was over and she did not want to see him anymore. Nevertheless, defendant persisted in contacting plaintiff. On January 26, 2008, at 3:07 a.m., for example, defendant sent the following text message to plaintiff: "I love you so. I'd never want you toI'd never want you to be with another man. Could turn ugly."
By a date no later than February 4, 2008, plaintiff ceased calling defendant and was emphatic that she did not want him to contact her further, either by telephone, text message, or by coming to her house. However, defendant persisted, frequently calling plaintiff, often multiple times per day, text messaging her frequently, and coming to her home. These contacts were often made in the middle of the night. The purpose of defendant's contacts was to attempt to rekindle the relationship.
*493 On February 14, 2008, plaintiff's father interceded. He called defendant and asked him to please stop contacting plaintiff and "to realize that the relationship was over." Defendant responded that "he knew he was out of control, he knew ... what he had to do."
Plaintiff described one incident where she was awakened in the middle of the night by her cell phone ringing. She did not answer the phone, but realized it was defendant who was calling. She looked out her window and saw defendant's car outside. She went downstairs and opened the door, finding defendant standing on the porch. He said he wanted to talk to her. Plaintiff's grandmother, with whom she lived, was awakened, as was plaintiff's cousin. Her grandmother came down and "told him that he needed to leave or the cops would be called."
Plaintiff also described an incident in which she found rose petals spread upon her car when she awoke one morning. She had no direct evidence that defendant placed them there, but she believed he did.
This course of conduct continued, culminating in a text message defendant sent to plaintiff on March 5, 2008 at 12:35 a.m., stating, "What's going on with you, Meredith?" Upon receipt of that communication, plaintiff signed a domestic violence complaint against defendant and obtained a temporary restraining order on that date. According to plaintiff, on the day defendant was served with the restraining order her neighbor "saw somebody outside of our home between 2 and 3 in the morning that matched his description." The police were called.
The matter came before Judge Vena on March 13, 2008 for a hearing to consider whether the retraining order should be made permanent. Plaintiff was unrepresented. Defendant was represented by counsel. Judge Vena heard the testimony of both parties and plaintiff's father. He found all three witnesses credible. Defendant did not deny his ongoing communications with plaintiff and did not deny that he initiated those communications notwithstanding her expression to him that they were unwelcome.
The judge found that the material facts were not in dispute and that the issue before him was a legal one. He found
that plaintiff was attempting to end the relationship between the parties and make it clear that she didn't want to be in contact with him. She obviously had some residual concerns for the defendant and wouldand contacted him at least up to February the 4th to express her concern for him, ... not in terms of intending to spark his interest. It had the net effect perhaps of doing that, but that wasn't reasonable in this Court's view.
....
I accept that at its face value [that it was not defendant's desire to do anything but to rekindle the relationship], but I believe that there reached a point sometime after perhaps as early as January 26th, but certainly after February the 4[th], certainly after the February the 14th, when ... the defendant spoke to the plaintiff's father that he recognized... that his behavior was not appropriate and that it was not welcome.
During that period of time, ... he would appear at the premises of the plaintiff at odd hours, communicating in a way likely to cause annoyance or alarm. He woke people sleeping in the house when he would visit at the house on Prospect Street in Nutley. He, during the course of those communications, acted in a way that in this Court's view, because of his presence, in and of itself at odd hours was likely to cause alarm. *494 And I think the case law is quite clear that one can, based upon the conduct, presume intent. And I find that taking it all into consideration that the defendant did, in fact, have a purpose to harass, did, in fact, make communications at extremely inconvenient hours in a manner likely to cause alarm, and that his conduct generally, whether it be his visiting the premises at odd hours, contacting the plaintiff repeatedly via telephone or voicemail, I don't get the sense that the defendant is particularly a danger to the plaintiff, but I do believe that the plaintiff has proven a pattern of harassment within the meaning of [N.J.S.A.] 2C:33-4.
Further, ... [plaintiff] could have done a much better job of making it abundantly clear to the defendant that she no longer was interested in having any contact with him.
Nonetheless, I believe that it was, in fact, communicated. And the Court, based upon that pattern of acts that this Court ... has legally concluded to be harassment, I find that there is a danger that the failure to issue a final restraining order could have the result[,] much like the absolutely foolish act of telephoning the defendant by the plaintiff, might have encouraged him to continue... what was unwanted contact. So would the failure of this Court to issue a final restraining order, have that effect as well.... I do believe that a final restraining order is necessary in order to prevent the defendant from continuing the contact of plaintiff. It is for that reason that the defendant is prohibited against future acts of domestic violence.
A person is guilty of harassment who, with purpose to harass another,
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively course language, or any other manner likely to cause annoyance or alarm;
.... or
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
[N.J.S.A. 2C:33-4.]
In the context of a domestic violence case, in addition to considering the discrete elements of the predicate offense, the court must also consider additional factors. These include the existence of immediate danger to the victim and the best interests of the victim. Cesare v. Cesare, 154 N.J. 394, 401, 713 A.2d 390 (1998); N.J.S.A. 2C:25-29a(2) and (4). The core purpose of the Act "effectuates the notion that the victim of domestic violence is entitled to be left alone. To be left alone is, in essence, the basic protection the law seeks to assure these victims." State v. Hoffman, 149 N.J. 564, 584, 695 A.2d 236 (1997).
We will not interfere with a trial judge's findings of fact when supported by adequate, substantial and credible evidence. Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974). Further, the findings and conclusions of a trial judge are entitled to enhanced deference in family court matters, given the special jurisdiction and expertise of family court judges in such matters. Cesare, supra, 154 N.J. at 413, 713 A.2d 390.
Applying these principles, we have no occasion to interfere with the findings and conclusions Judge Vena reached in this case. Defendant's communications and conduct with plaintiff, after being told clearly and repeatedly that they were unwelcome, satisfy the elements of either subsection (a) or (c) of the harassment *495 statute. Many of the communications were at extremely inconvenient hours, and the contacts were repeatedly committed. The drawing of an inference that, under all of the circumstances, defendant had a purpose to harass, is a factual finding and is well supported by the record. Finally, the judge's conclusion that the issuance of a final restraining order was necessary to prevent defendant from continuing his unwanted conduct with plaintiff was also supported by the evidence. The judge applied the correct legal standards in reaching his ultimate decision, and that decision was based upon findings of fact supported by substantial credible evidence in the record.
Affirmed.